IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE

Assigned on Briefs February 10, 2021

**STATE OF TENNESSEE v. WILLIE AUSTIN DAVIS**

**Appeal from the Criminal Court for Davidson County**
**No. 2017-A-62      Cheryl A. Blackburn, Judge**

_____

**No. M2019-01852-CCA-R3-CD**

_____

The Defendant, Willie Austin Davis, was convicted by a Davidson County Criminal Court jury of aggravated criminal trespass, a Class A misdemeanor, based on his entering the property of a Nashville church from which he had been banned. On appeal, the pro se Defendant argues that he was denied a fair trial due to the trial judge's failure to disclose his relationships with former and current members of the church and others. Following our review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, P.J., and ROBERT W. WEDEMEYER, J., joined.

Willie Austin Davis, Nashville, Tennessee, Pro Se.

Herbert H. Slatery III, Attorney General and Reporter; David H. Findley, Senior Assistant Attorney General; Glenn R. Funk, District Attorney General; and Jenny Charles and Chandler Harris, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

This case arises out of the Defendant's entering onto the grounds of the Covenant Presbyterian Church ("the Church" or "Church") in Nashville, of which he had formerly been a deacon, after he had been repeatedly warned to stay off the property. From the trial transcript and the pro se Defendant's voluminous, disjointed, and wide-ranging court filings in the case, we have gleaned that the Defendant became convinced that the Church's

elected group of ruling elders, known as the "Session," was protecting a former member and deacon of the Church who was excommunicated from the Church after his adult daughter revealed that he had sexually abused her when she was a child. The Defendant believes that the Church was involved in a coverup of the child abuse because it did not take what he considered sufficient action against the former church member. Although it is not entirely clear, it appears that the daughter divulged the childhood abuse in counseling sessions after she had turned eighteen but that she expressed no interest in pursuing the matter legally. The Defendant apparently believes that the Metro Nashville Police Department and other municipal, state, and federal governmental officials are involved in a vast conspiracy and coverup because, according to the Defendant, law enforcement officers to whom he reported the abuse falsely informed him that the statute of limitations for criminal prosecution of the abuser had run.

Sometime in 2002, the Defendant began a mass email-and-letter-writing campaign about the situation to members of the Church and to the Church leadership. Apparently, the Defendant also at some point in the saga sent mass emails and/or letters to the parents of school children at several schools in the Nashville area, including Harpeth Hall and Montgomery Bell Academy. The Church Session was motivated to action by an email the Defendant sent to every Church member in 2008 in which he named a certain Sunday as "an appropriate time for six years of lies and slander to come to an end." That email alarmed Church members so much that the Session, after consultation with one of their attorney members, Worrick Robinson, had the Clerk of the Session send a letter to the Defendant informing him that he was not welcome on the Church's property and would be considered a trespasser if he appeared. After receipt of the letter, the Defendant, by his own account, entered or attempted to enter the Church property on multiple occasions. On at least several of those occasions he was either blocked from entry by armed security guards hired by the Church or was asked to leave by Church elders.[1]

On October 25, 2015, the Defendant was escorted from Sunday services at the Church by Metro Nashville police officers who had been called to the scene by a member of the Church leadership. At that time, the Defendant acknowledged to an officer that he had read and understood the 2008 letter from the Session and was aware that his presence on the Church property frightened church members. He was warned by one of the police officers that he would be arrested for criminal trespass if he entered the property again. The Defendant once again entered Church property on November 15, 2015. He was promptly arrested and subsequently indicted for Class B misdemeanor aggravated criminal trespassing. A superseding indictment was later returned elevating the charge to Class A

---

[1]According to the testimony of an elder, additional security measures the Church implemented included locking Church doors and instituting a more secure procedure for children to be checked in and out of the Church and the school. At some point, the pastor of the Church also began to wear a bulletproof vest.

misdemeanor aggravated criminal trespassing based on the fact that there was a private elementary school operating on the Church grounds. See Tenn. Code Ann. § 39-14-406(c).

The Defendant was tried and convicted of the indicted charge by a Davidson County Criminal Court jury in September 2017. The Defendant's defense strategy consisted of attempting to prove that the Session lacked the authority to ban him from the Church property and that its members, along with the pastor, were attempting to thwart the Defendant's righteous efforts to expose Church corruption and child sex abuse. The Defendant elicited testimony from State and defense witnesses about the former Church member's behavior, the failure of the Church leadership to immediately excommunicate the member or contact the police when the abuse first came to light, and the fact that many of the members of the Church who once held leadership positions had since left the Church to form splinter churches in the community. Through his wife and daughter, the Defendant introduced evidence that he and his wife had been intricately involved with the Church from its formation, that the Church had once played an enormous role in their lives, and that the Defendant had filed three separate lawsuits against the Church since his dispute with the Church leadership began.

The Defendant was sentenced by the trial court to eleven months, twenty-nine days, to be served on supervised probation. Among the conditions of his probation were that he have no contact with any current or former member of the Church. A probation violation warrant was filed approximately one month later based on the Defendant's October 20, 2017 unsolicited email correspondence with members of the Church. The trial judge who had presided over the trial recused himself from further proceedings, noting in a footnote in the order of recusal that the Defendant's latest batch of emails contained photographs of the judge and a claim that the judge should have recused himself because the judge's uncle at one point had been a member of the Church. The judge stated in the order that he had had no information regarding the church membership of his uncle before or during the trial. The judge further stated that it was possible that if he examined the Church's mailing lists, he might know dozens of former or current members of the Church but that it would not have any bearing on his ability to conduct an impartial trial. In a second footnote, the judge noted that the Defendant had been arrested and was incarcerated on a probation violation warrant that had been signed by a different judge during a time when the trial judge was out of town.

At the conclusion of the probation violation hearing, which was presided over by the judge who had signed the probation violation warrant, the trial court found that the Defendant had violated the terms of his probation and revoked and reinstated the probation. After the Defendant sent more unsolicited and unsettling mass email communications to the headmaster and parents of students at Montgomery Bell Academy, the State sought and obtained a modification of the terms of the probation to prohibit the Defendant from

contacting any of the Montgomery Bell Academy faculty or staff or their families or anyone else connected with the school.[2]

The Defendant was represented by different attorneys at the probation hearings and at the July 12, 2019 hearing on his motion for new trial. Among the issues he raised in his amended motion for new trial was that the trial court erred "in not disclosing before trial certain relations that may have provided a motion under Rule 10B for the disqualification of [the trial judge]." Following the trial court's September 17, 2019 denial of his motion for a new trial, the Defendant, acting pro se, filed a notice of appeal to this court. Thereafter, the Defendant filed a pro se brief and reply brief, as well as numerous pro se motions asking this court to consider wide-ranging and irrelevant post-judgment facts that the Defendant apparently believes demonstrate the vast conspiracy that exists to prevent him from exposing corruption and child abuse in the Church and the greater community.[3]

## ANALYSIS

The Defendant contends on appeal that he was denied a fair trial due to the trial judge's relationships with several individuals. Specifically, he complains that the trial judge was prejudiced against him and should have recused himself due to his association with: Covenant Presbyterian Church member and Nashville attorney Worrick Robinson; State's witness John Bryant, a former federal magistrate and Covenant Presbyterian Church elder who had once been a member of the same Baptist church as the trial judge; the judge's father, who was a major with the Metropolitan Nashville Police Department; and the judge's uncle, who was a Covenant Church member at the time of the Defendant's arrest and was a former Metropolitan Nashville police officer. The Defendant additionally argues that the trial judge who presided over his probation revocation and modification proceedings should have recused herself due to "the power, relationships and influence of Attorney Worrick Robinson." The State responds that the Defendant has waived the issue by his failure to file a recusal motion in the trial court and that he cannot show that plain error relief is warranted.

The record reflects that the Defendant never brought up the trial judge's relationships with the various individuals prior to, during, or immediately after the trial and did not file any motion for the trial judge to recuse himself. We agree, therefore, that the issue is limited to plain error review. To be entitled to relief under the doctrine of plain

---

[2]The headmaster of the school testified at the modification hearing that the Defendant frightened parents by warning that the recipients of the email needed to read the attachments before the school's homecoming game.

[3]We have reviewed the Defendant's multiple motions and concluded that they are no well taken. Accordingly, they are denied.

error, the Defendant has the burden to establish the presence of the following five factors: (1) the record clearly establishes what occurred in the trial court; (2) a clear and unequivocal rule of law was breached; (3) a substantial right of the accused was adversely affected; (4) the issue was not waived for tactical reasons; and (5) consideration of the error is necessary to do substantial justice. State v. Vance, 596 S.W.3d 229, 254 (Tenn. 2020) (citations omitted). "'Moreover, the error must have been of 'sufficient magnitude that it probably changed the outcome of the trial.'" Id. (quoting State v. Banks, 271 S.W.3d 90, 119 (Tenn. 2008)).

In his reply brief, the Defendant disputes the State's contention that he waived the issue for tactical reasons, asserting that he is hard of hearing, a fact that he mentioned several times throughout the trial, and that he simply failed to hear the judge's disclosure that he and former federal magistrate John Bryant had both been members together of Woodmont Baptist at one point in time. Regardless, the Defendant cannot show that a clear and unequivocal rule of law was breached, that any substantial right of his was adversely affected, or that consideration of the error is necessary to do substantial justice.

"A judge shall disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned." Tenn. Sup. Ct. R.10, RJC 2.11 (A). "Bases for which a judge's impartiality might reasonably be questioned include . . . when the judge has 'a personal bias or prejudice' against any of the parties, 'personal knowledge of facts that are in dispute in the proceeding' [or] 'has served as a lawyer in the matter in controversy, or was associated with a lawyer who participated substantially as a lawyer  in the mater during such association[.]'" State v. Clark, 610 S.W.3d 739, 744 (Tenn. 2020) (quoting Tenn. Sup. Ct. R. 10, RJC 2.11 (A)(1),(A)(6)). "[T]the test for recusal requires a judge to disqualify himself or herself in any proceeding in which a person of ordinary prudence in the judge's position, knowing all of the facts known to the judge, would find a reasonable basis for questioning the judge's impartiality." Id. (internal quotations and citation omitted).

The Defendant has failed to show any reason that the judge's impartiality could reasonably be questioned. The judge himself brought up the fact he and the magistrate were at one point in time members of the same Baptist church after the Defendant elicited from the magistrate that he began attending the Church in September 2007 after many years spent at Woodmont Baptist Church. There was absolutely nothing to indicate that their membership together in the same church rendered the judge partial. There is also nothing in the record to show that either the trial judge or the probation revocation judge was in any way influenced by, or even acquainted with, Mr. Robinson. As for the trial judge's uncle and father, the trial judge noted in his order of recusal that he had no knowledge of his uncle's membership at Covenant. The Defendant does not explain why the employment of the judge's father or uncle as police officers, if that is indeed the case, rendered the judge

impartial, other than that it is the Defendant's belief that the police and the district attorney and other governmental entities are part of a vast conspiracy to silence him. We note that the trial judge was lenient with the pro se Defendant, allowing him far more latitude than would be afforded a licensed attorney to present what was, at best, only marginally relevant evidence relating to his dispute with the Church. The Defendant is not entitled to relief on the basis of this issue.

## CONCLUSION

Based on the foregoing authorities and reasoning, we affirm the judgment of the trial court.

_____
ALAN E. GLENN, JUDGE